IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THOMAS PAUL HAGGIE, | ) | |
|---|---|---|
| Petitioner, | ) | Civil Action No. 13-320 Erie |
| | ) | |
| v. | ) | District Judge Nora Barry Fischer |
| | ) | Magistrate Judge Susan Paradise Baxter |
| BRIAN COLEMAN, et al., | ) | |
| Respondents. | ) | |

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.  RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, Thomas Paul Haggie, be denied and that a certificate of appealability be denied.

## II.  REPORT

### A.  Relevant Background

On September 12, 2009, Megan Konopka, who was approximately 39 weeks pregnant, was brutally murdered in a hotel room in McKean County, Pennsylvania. Petitioner confessed to the police that he killed Konopka. He stated that he met her at a bar and later went to a hotel with her and his friend, Gregory Theobald. When Konopka was in the bathroom, the program Forensic Files came on the television and it prompted Petitioner to tell his friend that if he killed someone he would stab them because "I would want to feel the blood on my hands." Petitioner then remarked to Theobald: "we should kill this bitch." Petitioner told the police that when Konopka reentered the room he slit her throat with a disposable razor, choked her, and then cut her with a knife. [ECF No. 13-6 at 72-75].

Petitioner took a picture of the slain victim and sent it to his friend in California. He then fled the scene of the crime. He was apprehended in New York and was charged with numerous crimes. The

1

Commonwealth advised his defense that it was seeking the death penalty against him. Gary Knaresboro, Esq., and Michael Marshall, Esq., who were certified to represent a defendant in a capital case, were appointed to represent Petitioner.

On December 16, 2010, Petitioner appeared before the Court of Common Pleas of McKean County and pleaded guilty to murder of the first degree, in violation of 18 Pa.C.S. § 2502(a), in the killing of Konopka. He also pleaded guilty to murdering Konopka's unborn child, in violation of 18 Pa.C.S. § 2604(a). On January 13, 2011, the Court of Common Pleas sentenced Petitioner to two consecutive life sentences without the possibility of parole, in accordance with his plea agreement. Petitioner did not pursue a direct appeal.

In October 2011, Petitioner filed a *pro se* motion for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. Petitioner claimed that he told his attorneys that Theobald killed Konopka but that they coerced him into pleading guilty. He also contended that "mens rea was not proven"; that the Court of Common Pleas of McKean County did not have jurisdiction over him; that the state statute pertaining to murder of an unborn child, 18 Pa.C.S. § 2604(a), was unconstitutional; and, that he was acting in self-defense. [ECF No. 13-3, PCRA Hr'g Tr. at 32-48].

The Court of Common Pleas appointed Gregory Henry, Esq., to represent Petitioner in the PCRA proceeding. Henry subsequently filed a motion to withdraw pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988), which establish the procedure for withdrawal of court-appointed counsel in a collateral attack of a judgment of sentence.

On January 6, 2012, the Court of Common Pleas presided over a PCRA evidentiary hearing. Petitioner had no objection to the court granting Henry's request to withdraw and to proceeding *pro se*. The court granted Henry's request to withdraw but appointed him as standby counsel for the evidentiary hearing. Petitioner testified at the hearing, as did Attorney Knaresboro. At the conclusion of hearing, the

court dismissed outright all of Petitioner's claims for lack of merit except for his claims that: (1) his trial attorneys were ineffective for "coercing" him into pleading guilty even though he told them he was innocent; and, (2) that 18 Pa.C.S. § 2604(a) was unconstitutional. The court deferred ruling on those two claims so that Petitioner, who was getting assistance in the prison with his *pro se* filings, had time to file a post-hearing brief in which he could present legal arguments in support of them. [ECF No. 13-3, PCRA Hr'g Tr. at 9, 32-48].

On May 14, 2012, the Court of Common Pleas issued Findings of Fact and Memorandum of Law which denied Petitioner's request for PCRA relief. The court held:

> At the time he entered his plea [Petitioner] verified that he had completed a "Written Guilty Plea Colloquy," that the information in that written colloquy was true and correct; and, that he had voluntarily signed the verification attached to the written colloquy. The "Written Guilty Plea Colloquy" contains a full explanation that [Petitioner] does not have to enter a guilty plea, that he is entitled to a jury trial, and, that the Commonwealth has the burden to prove his guilt beyond a reasonable doubt. Further, [Petitioner] also verified that he had voluntarily signed, without threat of force or coercion, a "Written Guilty Plea." The Written Guilty Plea contained a very detailed statement of facts. [Petitioner] was also given an oral colloquy before he entered his plea. He testified that he understood what was going on, and, he was not being forced or threatened by anyone to enter a guilty plea– he was doing so of his own free will. He was asked about the detailed written findings of fact that are set forth in the written guilty plea agreement. He indicated that these facts were read to him by his attorneys and that he fully understood them. The facts were also read again in Court by District Attorney Raymond Learn and the Defendant was asked if the facts were accurate. He initially indicated "no" and stated "I did partial but not– I didn't do it all." He then stated "I mean I cut her throat and that's about it." He explained that he cut the victim's throat with a knife "about eight inches nine inches" that he had bought at a tattoo shop. He explained that the knife was in his apartment and he went to get it to cut the victim's throat. He demonstrated in the courtroom, pointing to his own throat, where and how he cut the victim's throat– "I believe I cut her right down here." He testified that he cut the victim's throat after his codefendant and he ([Petitioner]) had chocked her. He indicated that he cut the victim's throat "pretty deep" and the victim "started to bleed." He explained that, after he and the co-defendant had sexual intercourse with the victim, "it just happened." He testified that he ([Petitioner]) tried to choke the victim because he "wanted to make sure (she was dead)" after the co-defendant had tried to choke her. He testified that he tried to choke the victim for a "few minutes" and until "I got tired." When asked if he knew that the victim was pregnant prior to choking her and stabbing her, [Petitioner] answered "yes." [Petitioner] also stated that he fully understood that, to be guilty of criminal Homicide, he had to intentionally

3

kill the victim, and, he did in fact intend to kill the victim. [Petitioner] also indicated that it was his intent to plead guilty to one count of Murder of an Unborn Child.

[Petitioner] was specifically questioned regarding his attorneys' representation of him. He agreed that his attorneys had: 1) explained things to him in a way that he understood; 2) followed through with his requests about talking to witnesses or pursuing any defenses; and, 3) have, in general, done what he had asked of them. He indicated that he had no complaints about his attorneys' representation of him. When asked if he wanted more time to talk to his attorneys before entering a guilty plea [Petitioner] responded "Nope."

At the hearing to address [Petitioner's] PCRA petition, Gary A. Knaresboro, Esq., testified. He testified that: 1) he and Michael Marshall, Esq., were trial counsel for [Petitioner]; 2) he met with [Petitioner] on numerous occasions and discussed the strengths and weaknesses of [Petitioner's] case/defense(s); 3) he discussed the Commonwealth's plea offer in great detail with [Petitioner]; 4) he and Attorney Marshall fully explained to [Petitioner] that he had the absolute right to a trial and it was his ([Petitioner's] choice whether or not to accept the plea or proceed to trial; 5) [Petitioner] called counsel "early on" and advised them that he "wanted to enter a plea for life;" 6) he and Attorney Marshall advised [Petitioner] it was "to early" and to wait regarding a plea; 7) on the day that [Petitioner] entered his plea he provided facts to counsel and at the plea hearing that established [Petitioner's] guilt to the charges that he plead[ed] guilty to.

- - -

[Petitioner] makes two assertions: 1) that his attorneys were ineffective because they forced and coerced him into entering a guilty plea; and, 2) that his attorneys were ineffective for failing to question the constitutionality of the statute creating the offense of Murder of the First Degree of an Unborn Child, 18 Pa.C.S. §2604(a). Regarding the first assertion, the Court finds completely incredible [Petitioner's] assertion that he only plead[ed] guilty because he was coerced to do so. As outlined in the facts above, the facts of how [Petitioner] choked the victim and then cut open her throat with his eight inch knife that he had obtained from a tattoo [parlor] were outlined in substantial detail. The Defendant didn't just agree with the facts, he orally provided clarification to the written guilty plea facts. The Court finds credible attorney Knaresboro's assertion that he and attorney Michael Marshall fully advised [Petitioner] that he did not have to plead guilty and that he shouldn't do so unless he in fact was guilty. The Court accepts as accurate Attorney Knaresboro's testimony that [Petitioner] actually called him early in the case and asserted that he wanted to plead guilty and obtain a life sentence but he and Attorney Marshall advised him that it was too early, that they (counsel) wanted a chance to review the Commonwealth's evidence before [Petitioner] entered a plea. Further, the Court conducted an extensive oral colloquy of the Defendant at the time of the plea and it is clear from this colloquy that [Petitioner] understood what he was doing and was not coerced into entering a guilty plea.

The Court also finds no merit to [Petitioner's] assertion that attorneys Knaresboro and Marshall were ineffective for failing to question the constitutionality of the Count of Murder of the First Degree of an Unborn Child, 18 Pa.C.S. § 2604(a). As cited above, "[t]here has never been any notion that a third party . . . has a fundamental liberty interest in terminating another's pregnancy." People v. Ford, supra. The victim's child was 39

4

weeks in development when [Petitioner] brought about his Mother's death. It was obvious that Megan Ann Konopka was pregnant with Baby Boy Konopka. Baby Boy Konopka was not a "non-human . . . appendage" as asserted by [Petitioner] in his brief. Therefore, counsel cannot be faulted for failing to raise the meritless claim that [Petitioner] cannot be legally held accountable for bringing about Baby Boy Konopka's death.

[ECF No. 13-8, Commonwealth v. Haggie, No. 553 CR 2009, slip op. at 1-4, 7-8 (C.P. McKean, May 14, 2012)].

In his subsequent *pro se* appeal, the Superior Court of Pennsylvania explained that although Petitioner's brief was "confusing," it had determined that he was advancing "two different theories of ineffective assistance of counsel: (1) that trial counsel was ineffective for failing to object to alleged violations of [Petitioner's] 'double jeopardy' rights pursuant to the Fifth Amendment to the United States Constitution and 18 Pa.C.S. §§ 109, 110(i)-(iii); and (2) that trial counsel was ineffective for failing to raise an alleged claim of self-defense under 18 Pa.C.S. § 505(a)." [ECF No. 13-10, Commonwealth v. Haggie, No. 976 WDA 2012, slip op. at 5 (Pa. Super. Aug. 23, 2013)].

On August 23, 2013, the Superior Court issued a Memorandum in which it affirmed the Court of Common Pleas' decision that Petitioner was not entitled to PCRA relief. The Superior Court held that Petitioner's first claim of ineffective assistance was waived:

> [Petitioner's] argument under the first theory alleges that trial counsel should have objected to the imposition of consecutive life sentences following [Petitioner's] guilty plea. Although it is somewhat unclear on what basis [Petitioner] seeks to overturn this alleged "illegal [m]ultiple [p]unishment," we need not reach the merits of this argument. A thorough review of the reproduced record reveals that [Petitioner] failed properly to advance this specific theory of ineffective assistance of counsel before the PCRA court. This failure to preserve the issue for appellate review results in waiver of the claim pursuant to Pa.R.A.P. 302.

[ECF No. 13-10, Haggie, No. 976 WDA 2012, slip op. at 6-7].

As for Petitioner's second claim of ineffective assistance of counsel, the Superior Court held that Petitioner had preserved it for appellate review because he raised it before the PCRA court.

5

Nevertheless, it held that Petitioner failed to sufficiently develop it and, therefore, waived it too. The Superior Court explained:

> Counsel is presumed to be effective, and the burden of establishing ineffectiveness rests with [Petitioner]. Commonwealth v. House, 537 A.2d 361, 363 (Pa. Super. 1988). Under the PCRA, [Petitioner] must demonstrate ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). In Pennsylvania, courts utilize a three-pronged test for ineffectiveness requiring that "[Petitioner] must demonstrate that (1) the underlying claim is of arguable merit; (2) counsel's performance was unreasonable; and (3) counsel's ineffectiveness prejudiced [Petitioner]." Commonwealth v, Beasley, 678 A.2d 773, 778 (Pa. 1996); see Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). Additionally, "counsel will not be deemed ineffective for failing to raise baseless or frivolous issues." Commonwealth v. Arthur, 412 A.2d 498, 500 (Pa. 1980) (citing Commonwealth v. Wilson, 393 A.2d 1141, 1143 (Pa. 1978)).
> 
> "In accord with these well-established criteria for review, [Petitioner] must set forth and individually discuss substantively each prong of the Pierce test." Commonwealth v. Steele, 961 A.2d 786, 797 (Pa.2008); see Commonwealth v. James Jones, 876 A.2d 380, 386 (Pa. 2005). "Where it is clear that [Petitioner] has failed to meet any of the three, distinct prongs of the [ineffectiveness] test, the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." Steele, 961 A.2d at 797; Commonwealth v. Basemore, 744 A.2d 717, 738 (Pa. 2000). Therefore, undeveloped claims cannot satisfy [Petitioner's] burden with regard to establishing ineffective assistance of counsel. Steele, 961 A.2d at 797; Commonwealth v. Bracey, 795 A.2d 935, 940 (Pa. 2001).
> 
> [Petitioner's] second claim alleges that trial counsel was ineffective for failing to raise an allegedly proper claim of self-defense on [Petitioner's] behalf at trial. Reviewing [Petitioner's] brief, it is clear that [he] has failed substantively to argue or adequately to develop the satisfaction of any of the three prongs of the Pierce test. [Petitioner's] discussion of this second ineffectiveness theory makes no mention or argument relevant to the requirements of Pierce, and [Petitioner] cites no relevant Pennsylvania statute or case law to support his theory. Brief for Appellant at 6-8. Consequently, [Petitioner's] claims related to ineffectiveness are waived.

[ECF No. 13-10, Haggie, No. 976 WDA 2012, slip op. at 7-9].[1]

---

[1] Pennsylvania law for judging ineffectiveness corresponds with the standard set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

After the Superior Court affirmed the denial of PCRA relief, Petitioner commenced this federal habeas case by filing a petition for a writ of habeas corpus pursuant to the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id. See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

Petitioner raises 11 grounds for relief, which he sets forth in single-spaced text that span 21 pages of his brief. In **Ground One**, Petitioner contends that he was denied counsel in violation of his Sixth and Fourteenth Amendment rights because he "asserted his right to counsel on more than one occasion as well as the right to remain silent, but the police, without furnishing counsel, continued to interrogate the Petitioner, which resulted in securing potentially incriminating oral admission." [ECF No. 5 at 1].

In **Ground Two**, Petitioner contends that the Court of Common Pleas of McKean County lacked jurisdiction over him because of numerous purported constitutional violations that he asserts occurred. [ECF No. 5 at 2-4].

In **Ground Three**, Petitioner contends that his Sixth and Fourteenth Amendment rights were violated because he "did NOT have any counsel of record between 9-16-09 and 11-30-09." [ECF No. 5 at 4-5].

In **Ground Four**, Petitioner once again argues that the Court of Common Pleas of McKean County lacked jurisdiction over him because of numerous purported constitutional violations that he asserts occurred. [ECF No. 5 at 5-6].

In **Grounds Five, Six, and Seven**, Petitioner argues that his federal constitutional rights were violated because "no preliminary arraignment ever took place," "no preliminary hearing ever took place," and "no formal arraignment ever took place." [ECF No. 5 at 6-7].

In **Ground Eight**, Petitioner contends that his right to a speedy trial was violated. [ECF No. 5 at 8-9].

In **Ground Nine**, Petitioner argues that he was denied his Sixth Amendment right to counsel because: (1) he was denied counsel at his extradition hearing; and, (2) his counsel: (a) "waited until after the trial court ruled on the Commonwealth's motion to consolidate cases for purposes of Preliminary Hearing to enter their appearance" and, therefore, did not file a response to the Commonwealth's motion; (b) failed to raise any of the issue set forth in Grounds One through Eight of the petition; (c) failed to obtain an investigator; (d) failed to provide him with "real notice of the true nature of the charges against him"; (e) failed to inform him that he had the right to a direct appeal; and, (f) failed to obtain a copy of the coroner's report and relied on the prosecution's statements as to the cause of death. [ECF No. 5 at 9-16].

In **Ground Ten**, Petitioner argues that his PCRA counsel, Attorney Henry, provided him with ineffective assistance during the PCRA proceeding. [ECF No. 5 at 17-19].

In **Ground Eleven**, Petitioner claims that the prosecution engaged in misconduct because it "knew or should have known that police in Elmira, New York took photographs and obtained (alleged) evidence, including possible statements from the Petitioner which were never disclosed to the defense counsel." [ECF No. 5 at 19-20].

Respondents have filed their Answer [ECF No. 13], to which Petitioner has filed a Reply [ECF No. 19].

B.   **Discussion**

There are many problems with Petitioner's claims. **First**, he cannot proceed with some of them because he pleaded guilty. The U.S. Supreme Court has strictly limited the circumstances under which a guilty plea may be attacked on collateral review, noting: "It is well settled that a voluntary and intelligent plea of guilt made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)).[2]

**Second**, some of Petitioner's claims are not cognizable in a federal habeas action, regardless of whether he pleaded guilty. In several of his grounds for relief, Petitioner raises issues of alleged state law error. For example, he argues that certain state procedural rules or his rights under the Constitution of the Commonwealth of Pennsylvania have been violated. As explained above, such claims are not cognizable under 28 U.S.C. § 2254, which limits the claims that a state prisoner can raise in federal habeas to those that assert violations of the U.S. Constitution. Relatedly, in Claim Ten, Petitioner contends that his PCRA counsel, Attorney Henry, was ineffective. Petitioner did not have a federal constitutional right to counsel during his PCRA proceeding, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), and, for that reason, cannot receive habeas relief on his claim that his PCRA counsel was ineffective. See also Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) ("There is no constitutional

---

[2]   In an attempt to get around the limitation his guilty plea has on his availability to receive relief on collateral review, Petitioner, in his numerous claims of ineffective assistance of counsel, implies that his guilty plea was not "voluntary and intelligent." He also raises claims that the trial court lacked jurisdiction. Although these claims have no merit whatsoever, for the reasons set forth *infra*, they must be denied by the Court because they are procedurally defaulted.

9

right to an attorney in state post-conviction proceedings…. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance.)"). In fact, the federal habeas statute expressly states that claims of collateral counsel's ineffectiveness is not cognizable in a federal habeas action. 28 U.S.C. § 2254(i) ("[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254.").[3]

**Third**, all of Petitioner's claims are procedurally defaulted. This doctrine is "grounded in concerns of comity and federalism," Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner failed to raise it in compliance with a state's procedural rules. It provides that a federal habeas claim may not be addressed by the federal habeas court if the petitioner either: (a) failed to present it to the state court and the state court would now decline to address it on the merits because state procedural rules bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the state court declined to address the federal claim on the merits. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451 (2000); O'Sullivan v. Boerckel, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); Wainwright v. Sykes, 433 U.S. 72 (1977); Lines v. Larkins, 208 F.3d 153, 162-69 (3d Cir. 2000).

Except for the two claims of ineffective assistance of counsel that the Superior Court addressed in its Memorandum, all of Petitioner's claims are procedurally defaulted because he failed to raise them

---

[3] It must be pointed that since Henry filed a Finley/Turner no merit letter and was permitted to withdraw as Petitioner's counsel, Petitioner proceeded *pro se* in his PCRA proceeding and he cannot blame Henry for the fact that his PCRA litigation was unsuccessful.

10

in an appeal to the Superior Court (he failed to "exhaust" them),[4] and cannot go back to the Superior Court and raise them now (it would be "futile" because there is no available avenue for him to raise them). As for the two claims that Petitioner did raise before the Superior Court, they are procedurally defaulted because the Superior Court expressly determined that he waived them.[5]

A petitioner who has defaulted a federal habeas claim can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "*external to the defense*" impeded efforts to comply with the state's procedural rule, and "actual

---

[4] A federal habeas court may not grant a state prisoner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman, 501 U.S. at 731. See also O'Sullivan, 526 U.S. at 842-49. In order to exhaust a claim, "state prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45 (emphasis added). In Pennsylvania, this requirement means that a petitioner in a non-capital case *must have presented every federal constitutional claim raised in his habeas petition to the Superior Court either on direct or PCRA appeal*. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004). Petitioner did not file a direct appeal, so what this Court must look to are the claims that Petitioner raised to the Superior Court in his PCRA appeal. Petitioner carries the burden of proving exhaustion of all available state remedies, see, e.g., Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), and he has not met that burden. Importantly, in order to do so he must demonstrate that he raised each of the claims at issue to the Superior Court through the proper vehicle, not just that he raised a federal constitutional claim before a state court at some point. See, e.g., O'Sullivan, 526 U.S. at 845 (a petitioner must have presented a claim through the "established" means of presenting a claim in state court at the time); Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007).
  The only claims the Superior Court could discern as being raised in the PCRA appeal were: (1) that trial counsel was ineffective for failing to object to alleged violation violations of Petitioner's 'double jeopardy' rights pursuant to the Fifth Amendment to the United States Constitution and 18 Pa.C.S. §§ 109, 110(i)-(iii); and (2) that trial counsel was ineffective for failing to raise an alleged claim of self-defense under 18 Pa.C.S. § 505(a)." [ECF No. 13-10, Haggie, No. 976 WDA 2012, slip op. at 5]. Accordingly, all of Petitioner's federal habeas claims except for these two claims are procedurally defaulted for failing to raise them to the Superior Court in his appeal. See, e.g., Lines, 208 F.3d at 160; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). (As discussed *infra*, those two claims are procedurally defaulted for the separate reason that the Superior Court determined that Petitioner waived them. However, if this Court could review them on the merits, they would be denied because there is no merit whatsoever to them.)

[5] The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court declined to rule on the merits of the claim because it determined that the petitioner did not comply with a state procedural rule, and that rule is independent of the federal question and adequate to support the judgment. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732. A state rule is "adequate" if: (1) the state procedural rule was sufficiently clear at the time of the default to have put the petitioner on notice of what conduct was required; (2) the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule; and (3) the state court's refusal was consistent with other decisions. Shotts v. Wetzel, 724 F.3d 364, 370 (3d Cir. 2013); Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007). See also Beard v. Kindler, 558 U.S. 53 (2009) (discretionary state rules can be "adequate"); Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred); Brian R. Means, Federal Habeas Manual § 9B:28-49 (June 2014).

prejudice." See, e.g., Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986); Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012).[6] Petitioner blames Attorney Henry, his court-appointed PCRA counsel, for failing to properly raise his claims, but that argument has no merit. Attorney Henry was permitted to withdraw as his PCRA counsel and Petitioner did not object to proceeding *pro se*. Petitioner had the opportunity to explain to the PCRA court during the hearing what grounds for relief he was alleging, and, after the PCRA court denied him relief, he had the opportunity to raise his grounds for relief before the Superior Court. That court attempted to decipher Petitioner's claims and determined that he essentially was raising two ineffective assistance of counsel claims, both of which were waived. Any failure to properly raise and brief his PCRA claims is attributable solely to Petitioner, since he was proceeding *pro se*.

A petitioner may also overcome a procedural default of a claim if he can demonstrate a "miscarriage of justice." This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). Where the petitioner pleaded guilty (as in the instant case), he also must establish his actual innocence not only of the count to which he pleaded guilty, but also the other charges the government excused in the plea bargaining process. Bousley v. United States, 523 U.S. 614, 623-24 (1998). The "miscarriage of justice" exception only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who

---

[6]    In Martinez, the Supreme Court held for the first time that in states like Pennsylvania, where state law requires that claims of ineffective assistance of trial counsel be raised in an initial-review collateral proceeding (such as the PCRA), a petitioner may be able to establish "cause" sufficient to overcome a procedural default of "a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective [under the standards of Strickland]." 132 S.Ct. at 1320. The Supreme Court based its decision on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. Martinez, 132 S.Ct. at 1313-21.

is actually innocent. Schulp, 513 U.S. at 316. There is no question that this is not the type of extraordinary case in which a petitioner can overcome the default of his claims by way of the miscarriage of justice exception.

For the reasons set forth above, all of Petitioner's claims must be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: October 6, 2014

cc: The Honorable Nora Barry Fischer
United States District Judge